UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DION DESHA BALLARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 09-CV-0019-CVE-PJC |
| | ) |
| JASON B. MUSE and | ) |
| DANIEL BEAN a/k/a Danny Bean, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Now before the Court is the Motion for Summary Judgment Based Upon Qualified Immunity by Defendants Muse and Bean or alternatively Motion to Dismiss and Brief in Support (Dkt. # 27). Plaintiff has asserted claims under 42 U.S.C. § 1983 alleging, inter alia, that police officers violated his constitutional rights by using excessive force to arrest him. Dkt. # 1, at 1-2. Defendants assert that they are entitled to qualified immunity from plaintiff's claims or, in the alternative, ask the Court to dismiss plaintiff's claims under Fed. R. Civ. P. 12(b)(1) and (6).

**I.**

At 7:35 p.m. on September 5, 2008, an unidentified person called 911 and stated that an unidentified male "BROKE OUT SOMEONE'S WINDOW FOR NO REASON." Dkt. # 29, at 1. The caller hung up and did not answer a return call. Id. The call was placed from the Bradford Apartment Complex in Tulsa, Oklahoma, and this is recognized as a high crime area. Dkt. # 18, at 3. The Tulsa Police Department (TPD) sent Officers Jason B. Muse, Daniel Bean, and Heather Weakley to respond to the call. Dkt. # 27-4, at 2. The officers arrived at the apartment complex and observed a man sitting in the stairwell. The man was later identified as Dion Desha Ballard, and

Muse saw several open bottles of alcohol near Ballard. Dkt. # 27-3, at 2-3. Muse attempted to make contact with the person who called 911. No one answered the door of the apartment from which the 911 call had been placed, but Muse noticed that Ballard was leaning back against the stairwell as if to conceal something from view. Id. at 3. Muse and Bean observed a cigar[1] near Ballard and all three police officers detected an odor of marijuana. Ballard told police that the person who reported the vandalism had left and the police should leave. Dkt. # 27-5, at 2. Muse asked Ballard if he was smoking marijuana and Ballard began to act nervous. Dkt. # 27-3, at 3.

Ballard grabbed the cigar and shoved it in his mouth, and he attempted to run from the police officers. Dkt. # 27-3, at 3; Dkt. # 27-4, at 3; Dkt. # 27-5, at 2. Muse grabbed Ballard's arm, and Ballard struggled the police officers. Dkt. # 27-3, at 3. Muse and Bean asked Weakley to spray Ballard with OC spray and Ballard continued to resist arrest. Id. Ballard kicked Bean in the chest and hit Muse in the head, and he grabbed Muse's metal flashlight.[2] Id. After about a minute, Muse was able to reclaim the flashlight. Dkt. # 27-5, at 2. Weakley states that Muse struck Ballard in the right arm and shoulder three times, and Bean struck Ballard in the lower torso and abdomen with his fist. Id. at 3. Muse pulled Ballard's right arm behind his back and Bean handcuffed Ballard. Dkt. # 27-4, at 3.

---

[1] Police recovered the chewed cigar from Ballard and laboratory testing confirmed that the cigar contained marijuana. Police also seized a plastic baggie from defendant's person, and the plastic baggie contained 3.8 ounces of marijuana. Dkt. # 18, at 3.

[2] Defendants have provided video footage from a surveillance camera in the apartment complex parking lot. The footage is grainy and does not provide a clear view of the incident, but it is apparent that a flashlight is turned on and the beam moves erratically as if someone is swinging the flashlight. See Dkt. # 31 (DVD of surveillance camera footage).

While this struggle was occurring, a crowd had gathered to watch the encounter and to encourage Ballard to resist arrest. In particular, a woman approached the officers and began to yell at them. Dkt. # 27-4, at 4. The woman was later identified as Teneshia Smith. After Ballard was subdued, Bean remained with Ballard while Muse talked to the crowd. Dkt. # 27-3, at 4. Muse states that approximately 50 people had gathered to watch Ballard's arrest. Id. Muse and Weakley attempted to arrest Smith, but she resisted arrest and Muse had to use his OC spray on her. Id. The police officers called for backup to maintain control of the crowd while Muse, Bean, and Weakley took Ballard and Smith into custody, and other police officers arrived at the scene to assist Muse, Bean, and Weakley. Id.; Dkt. # 27-5, at 3. TPD Officer Matthew McCord arrived in his patrol car and transported Ballard to Uniform Division North. Dkt. # 27-6, at 1. McCord initially transported Ballard to Uniform Division North for observation, instead of the David L. Moss Correctional Center, because he had been advised that Weakly sprayed Ballard with OC spray. Id. at 1-2. TPD monitored Ballard and transported Ballard to the David L. Moss Correctional Center after determining that Ballard was not in need of medical treatment. Id. at 2.

Upon arriving at the jail, Ballard was booked on charges of possession of marijuana, assault and battery on a police officer, resisting arrest, and public intoxication. Dkt. # 27-2, at 32. Ballard completed intake forms provided by the jail and stated that he had an injury. Dkt. # 29-5. He listed his injury as a "scrape on cheek." Id. An intake screening form completed by the Tulsa County Sheriff's Office noted that there were visible signs of injury and that Ballard appeared to be under the influence of drugs or alcohol. Id. at 4. The Tulsa County District Attorney's Office filed an information charging Ballard with assault and battery of a police officer, possession of a controlled drug, and a misdemeanor offense of public intoxication. Dkt. # 27-1, at 2-3. Ballard pled nolo

3

contendere to all three charges, and was sentenced to 42 months imprisonment. Dkt. # 27-1, at 54-59, 63-66. In the written plea documents, Ballard acknowledged that "The State would produce evidence that I hit a [police officer] in his rightful duty. That I possessed [marijuana] and I was intoxicated in public place." Id. at 65. He was ordered to pay fines and court costs of $2,648. Id. at 54-60. Ballard did not appeal his convictions or sentence, and he is currently in custody at the Davis Correctional Facility in Holdenville, Oklahoma. Dkt. # 18, at 2.

Ballard filed this case alleging that Muse and Bean violated his constitutional rights. Ballard asserts that he was falsely arrested (Count I), police used excessive force and denied him medical attention (Count II), and Bean made false statements at plaintiff's preliminary hearing (Count III).[3] Defendants have filed a motion for summary judgment or to dismiss and assert, inter alia, that they are entitled to qualified immunity from plaintiff's claims.

## II.

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. Applied Genetics Int'l, Inc. v. First Affiliated

---

[3] Plaintiff alleges that Bean gave false testimony at his preliminary hearing and this constitutes a violation of his constitutional rights. However, Bean did not testify at the preliminary hearing and plaintiff's claim is meritless. See Dkt. # 27-3, at 43-66 (complete transcript of preliminary hearing at which only Muse testified). Plaintiff's response suggests that he intended to assert that Muse gave false testimony at the preliminary hearing, and Muse did testify at the preliminary hearing. Dkt. # 35, at 1. Construing plaintiff's pro se pleadings broadly, the Court will assume that plaintiff intended to allege that Muse gave false testimony at the preliminary hearing.

4

Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). "However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Id. The Court cannot resolve material factual disputes at summary judgment based on conflicting affidavits. Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991). The mere existence of an alleged factual dispute, however, does not defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Only material factual disputes preclude summary judgment; immaterial disputes are irrelevant. Hall, 935 F.2d at 1111. Similarly, affidavits must be based on personal knowledge and set forth facts that would be admissible in evidence. Id. Conclusory or self-serving affidavits are not sufficient. Id. If the evidence, viewed in the light most favorable to the nonmovant, fails to show that there exists a genuine issue of material fact, the moving party is entitled to judgment as a matter of law. See Anderson, 477 U.S. at 250.

Where a pro se plaintiff is a prisoner, a court authorized "Martinez[4] Report" (Special Report) prepared by prison officials may be necessary to aid the Court in determining possible legal bases for relief for unartfully drawn complaints. See Hall, 935 F.2d at 1109. The Court may treat the Martinez Report as an affidavit in support of a motion for summary judgment, but may not accept the factual findings of the report if the plaintiff has presented conflicting evidence. Id. at 1111. The plaintiff's complaint may also be treated as an affidavit if it is sworn under penalty of perjury and states facts based on personal knowledge. Id. The Court must also construe plaintiff's pro se pleadings liberally for purposes of summary judgment. Haines v. Kerner, 404 U.S. 519, 520 (1972). When reviewing a motion for summary judgment it is not the judge's function to weigh the evidence

---

[4] Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978).

and determine the truth of the matter but only to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

In considering defendants' motion for summary judgment, the Court has examined the complaint (Dkt. # 1), the Special Report (Dkt. #s 18), the exhibits to the motion for summary judgment (Dkt. ## 27, 29, 30, 31), and plaintiff's response (Dkt. # 35) to the motion for summary judgment. Plaintiff has not presented evidence to refute the summary judgment evidence provided by defendants, but he does ask the Court to review the video of his arrest and not to rely solely on the statements of police officers. Dkt. # 35. The Court has considered all these materials and has reviewed the videos.

### III.

Defendants request summary judgment on plaintiff's claims or, in the alternative, dismissal of plaintiff's claims under Fed. R. Civ. P. 12(b)(6). Defendants argue that they had probable cause to arrest plaintiff and they used a reasonable amount of force to arrest him. Plaintiff responds that the video evidence supports his claim that police officers attacked him without provocation and used excessive force to arrest him. Dkt. # 35.

Defendants contend that the doctrine of qualified immunity warrants summary judgment against plaintiff on all of his claims. See Dkt. # 27. The doctrine of qualified immunity shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law. See Pearson v. Callahan, 555 U.S. 223 (2009). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The qualified immunity inquiry requires analysis of two distinct questions: (1) whether, when taken in the light most favorable to the plaintiff as the party asserting the injury, the

6

plaintiff demonstrates sufficient facts to show the public official's conduct violated plaintiff's constitutional rights; and (2) whether the constitutional right alleged to be violated was clearly established at the time of the alleged violation in a sufficiently analogous factual setting. See Saucier v. Katz, 533 U.S. 194, 201 (2001), abrogated in part by Pearson, 555 U.S. 223. While it is often desirable to proceed initially with the first prong, a finding of qualified immunity may be appropriate on either question. See Pearson, 129 S.Ct. at 818. If both inquiries can be met in the affirmative, then the defendant is not entitled to qualified immunity. See Saucier, 533 U.S. at 201.

"In rebutting a qualified immunity claim at the summary judgment level, a plaintiff can no longer rest on the pleadings and the court looks to the evidence before it (in the light most favorable to the plaintiff)." Axson-Flynn v. Johnson, 356 F.3d 1277, 1299 (10th Cir. 2004) (internal citation and quotation marks omitted). "Once the plaintiff makes this showing, the defendant bears the usual burden of a party moving for summary judgment to show that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Id. at 1299-1300. "More specifically, the defendant must show that there are no material factual disputes as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time." Id. at 1300. "At all times during this analysis, we evaluate the evidence in the light most favorable to the nonmoving party." Id.

**False Arrest**

Plaintiff claims that he was falsely arrested because he did not possess marijuana or assault a police officer on September 5, 2008. Dkt. # 1, at 3-4. Defendants argue that they are entitled to qualified immunity as to plaintiff's false arrest claim, because they reasonably believed that they had probable cause to arrest plaintiff. Dkt. # 27, at 7.

7

The law is clearly established that a police officer may conduct a warrantless arrest if there is probable cause to believe that the person arrested committed a crime. Tanberg v. Sholtis, 401 F.3d 1151, 1159 (10th Cir. 2005). "Probable cause exists 'where facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that an offense has been or is being committed.'" Marshall v. Columbia Lea Regional Hosp., 345 F.3d 1157, 1166 (10th Cir. 2003) (quoting Karr v. Smith, 774 F.2d 1029, 1031 (10th Cir. 1985)). In the context of a § 1983 claim, a police officer is entitled to qualified immunity if "'a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995). "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

The evidence shows that Muse and Bean arrived at the Bradford Apartment Complex and found plaintiff surrounded by several bottles of alcohol. Dkt. # 27-3, at 3. Police officers also detected an odor of marijuana and observed a cigar near plaintiff. Id.; Dkt. # 27-4, at 3; Dkt. # 27-5, at 2. Plaintiff began to act nervous and acted as if he was attempting to hide something from the view of the police officers. Plaintiff put the cigar in his mouth and attempted to flee. Dkt. # 27-3, at 3. Muse grabbed plaintiff's arm and plaintiff began to struggle with Muse and Bean. Id.; Dkt. # 27-4, at 3. Plaintiff resisted Muse and Bean's efforts to arrest him, and they asked Weakley to use OC spray on plaintiff. Dkt. # 27-5, at 2. During the struggle, plaintiff reached for Muse's metal flashlight and tried to hit Muse with the flashlight. Dkt. # 18, at 4. Muse was able to recover the flashlight, and Bean handcuffed plaintiff. After plaintiff was in custody, Muse and Bean recovered the chewed cigar and a plastic baggie from plaintiff. The chewed cigar and the plastic baggie both

8

contained marijuana. Dkt. # 18, at 3. Plaintiff has submitted a one page response to defendant's motion for summary judgment, and his response contains no argument as to his false arrest or imprisonment claim. He asks the Court to review the video evidence, but he has not submitted any other evidence in support of his claim. See Dkt. # 35. He also does not dispute any specific statement of undisputed fact stated in defendants' motion for summary judgment.

Viewing the facts in a light most favorable to plaintiff, the Court finds that defendants are entitled to qualified immunity on plaintiff's false arrest claim (Count I). The Court has reviewed defendants' affidavits and the video from the surveillance camera, and finds that a reasonable police officer could have believed that he had probable cause to arrest plaintiff for possession of marijuana, resisting arrest, and/or public intoxication. Even if the Court were to assume that plaintiff did not initiate the use of force with Muse and Bean, it is clear that plaintiff was drinking alcohol and was in possession of marijuana at the time of his arrest. Muse and Bean believed that plaintiff was intoxicated or under the influence of alcohol or marijuana in a public place, and their belief was reasonable based on their observation of open bottles of alcohol and a marijuana cigar. They could also have reasonably believed that plaintiff was in possession of marijuana. Public intoxication and possession of marijuana are both crimes under Oklahoma law. See OKLA. STAT. tit. 37, § 537 (prohibiting any person from being intoxicated in a public place); OKLA. STAT. tit. 63, § 2-402 (prohibiting possession of marijuana). Thus, the Court find that Muse and Bean had probable cause to arrest plaintiff for violations of Oklahoma law and they are entitled to qualified immunity on this claim.

**Excessive Force**

Defendants argue that they are entitled to qualified immunity on plaintiff's claim of excessive force, because they used the minimum amount of force necessary to arrest an intoxicated suspect attempting to avoid a lawful arrest. Dkt. # 27, at 6. Plaintiff does not challenge any specific statement of undisputed fact offered by defendants, but he generally argues that he did not attack defendants. Dkt. # 35. Plaintiff may also be asserting a claim that Bean acted with deliberate indifference and denied plaintiff medical treatment, and the Court will consider this issue as well.

Defendants' use of force against plaintiff is analyzed under the Fourth Amendment, which guarantees citizens the right to be free from unreasonable searches and seizures. Graham v. Connor, 490 U.S. 386, 388 (1989); Terry v. Ohio, 392 U.S. 1, 8 (1968). The Fourth Amendment standard governing excessive force claims is well settled. "[L]aw enforcement officers must be 'objectively reasonable' in their searches and seizures." Dixon v. Richer, 922 F.2d 1456, 1461 (10th Cir. 1991). According to the Supreme Court,

> Determining whether force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake . . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight . . . . The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

Graham, 490 U.S. at 396 (alterations, citations, and quotations omitted). A court "must assess reasonableness from the perspective of a reasonable officer on the scene, 'rather than with the 20/20 vision of hindsight,' and consider that 'police officers . . . make split-second judgments-in

circumstances that are tense, uncertain and rapidly evolving-about the amount of force necessary in a particular situation.'" Blossom v. Yarbrough, 429 F.3d 963, 967 (10th Cir. 2005) (quoting Graham, 490 U.S. at 396-97). To evaluate excessive force, the Court views the facts from the perspective of the officer. See Graham, 490 U.S. at 396-97. The focus of the inquiry is on the circumstances as they existed at the moment force was used. Id. In evaluating an excessive force claim, courts are to consider the totality of the circumstances. Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004) (citing Sevier v. City of Lawrence, 60 F.3d 695, 699 (10th Cir. 1995)).

Applying Graham and considering the totality of the circumstances, the Court finds that Muse and Bean used a reasonable amount of force to arrest plaintiff. The evidence shows that plaintiff attempted to flee and Muse grabbed plaintiff's arm to prevent him from escaping. Dkt. # 27-3, at 3. Plaintiff kicked Bean in the chest and hit Muse in the head, and plaintiff reached for Muse's metal flashlight. Id.; Dkt. # 27-4, at 3. Bean and Muse struck plaintiff in arm, shoulder, torso, and abdomen, and plaintiff continued to resist arrest. The struggle ended when Muse was able to pull plaintiff's arm behind his back and Bean handcuffed plaintiff. Dkt. # 27-3, at 4. Intake forms completed at the jail show that plaintiff had a visible injury, but plaintiff described his injury as a "scrape on cheek." It does not appear that plaintiff suffered any serious physical injury from the encounter, but this is not the end of the Court's inquiry. Several other factors support defendants' assertion that the use of some force was reasonable to arrest plaintiff. Plaintiff was attempting to flee and was physically resisting arrest, and both of these factors are relevant. See Marquez v. City of Albuquerque, 399 F.3d 1216, 1220 (10th Cir. 2005). The Court also takes into account that plaintiff's conduct was encouraging a crowd to form and at least one person, Smith, was arrested

for interfering with Muse's and Bean's arrest of plaintiff. It is clear that it was reasonable for Muse and Bean to use some amount of force to arrest plaintiff and to protect themselves during the encounter. Considering plaintiff's attempt to flee and use of force to resist arrest, plaintiff's intoxication, the minimal injuries suffered by plaintiff, and the tense nature of the situation, the amount of force used by Muse and Bean was reasonable under the circumstances and they are entitled to qualified immunity from plaintiff's excessive force claim.

Plaintiff also argues that Bean was deliberately indifferent to plaintiff's need for medical attention, and this is a separate basis for relief against Bean. "Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 827 (1994). In Wilson v. Seiter, 501 U.S. 294 (1991), the Supreme Court clarified that the deliberate indifference standard under Estelle v. Gamble, 429 U.S. 97 (1976), has two components: (1) an objective requirement that the pain or deprivation be sufficiently serious; and (2) a subjective requirement that the offending officials act with a sufficiently culpable state of mind. Id. at 298-99. Negligence does not state a claim under § 1983 for deliberate indifference to medical needs. Hicks v. Frey, 992 F.2d 1450, 1455 (6th Cir. 1993). In addition, differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). A delay in medical care only constitutes a constitutional violation where the plaintiff can show that the delay resulted in substantial harm. Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir.2001).

Viewing the facts in a light most favorable to plaintiff, the Court finds that Bean was not deliberately indifferent to plaintiff's medical needs. The evidence shows that plaintiff resisted arrest

and some force was required to prevent him from escaping or harming Muse or Bean. There is no dispute that Weakley used OC spray on plaintiff. However, Muse and Bean were clearly aware of this and directed McCord to take plaintiff to Uniform Division North for observation before taking plaintiff to jail. Dkt. # 27-6, at 1. Plaintiff did not show any adverse side-effects from the OC spray and was transported to jail. Plaintiff completed an intake form at the jail and stated that he had a "scrape on cheek." The video footage from the jail does not show that plaintiff appeared to be suffering from any significant physical injuries.[5] There is no evidence that plaintiff suffered a serious injury during his arrest, and plaintiff cannot establish the first element of a deliberate indifference claim. See Wilson, 501 U.S. at 298. There is also no evidence that Bean acted with the subjective intent to inflict cruel or unusual punishment on plaintiff. To the contrary, plaintiff was taken to Uniform Division North due to a concern that he would suffer an adverse reaction to OC spray, and the evidence does not support a finding that Bean had the subjective intent to inflict injury on plaintiff. Thus, Bean is entitled to qualified immunity on plaintiff's deliberate indifference claim.

**False Testimony**

Construing plaintiff's pro se pleadings broadly, it also appears that plaintiff is asserting that Muse gave false testimony at plaintiff's preliminary hearing. Police officers have absolute immunity from civil claims based on allegations that they testified falsely at a court hearing. Briscoe v. LaHue, 460 U.S. 325 (1983); Miller v. Glanz, 948 F.2d 1562, 1570 (10th Cir. 1991). Plaintiff's claim is also barred by Heck v. Humphrey, 512 U.S. 477 (1994), which prohibits the use of § 1983

---

[5] Plaintiff does not assert a claim against the jail or jail personnel for deliberate indifference, but the Court notes these facts to the extent that they are relevant to show that plaintiff did not suffer serious injuries during his arrest by Muse and Bean.

13

to assert claims that directly challenge the validity of a conviction or sentence. Butler v. Compton, 482 F.3d 1277, 1279 (10th Cir. 2007) ("The purpose behind *Heck* is to prevent litigants from using a § 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions."). Thus, plaintiff's claim based on alleged false testimony at a preliminary hearing is barred by Briscoe and Heck.

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment Based Upon Qualified Immunity by Defendants Muse and Bean or alternatively Motion to Dismiss and Brief in Support (Dkt. # 27) is **granted**. A separate judgment is entered herewith.

**DATED** this 21st day of March, 2011.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT